* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Chapman.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS 1.The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
 2.An employee-employer relationship existed between the named employee and named employer.
 3. Safety National Casualty Insurance Corp. was the carrier on the risk.
In addition, the parties stipulated into evidence a packet of medical records and reports. A written stipulation to the medical records were subsequently submitted and attached to them.
The Pre-Trial Agreement dated October 13, 2006, which was submitted by the parties, is incorporated by reference.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1.At the time of the hearing before the Deputy Commissioner, plaintiff was forty-seven years old and a high school graduate. He began working for defendant-employer in January 1985 as a filter assembler. Defendant-employer manufactured air purification products for hospitals, semiconductor plants and other companies which had "clean rooms." The filter assemblers would put paper filter elements into frames using urethane to seal them together. They worked in teams of two. Although there were occasions when the experienced assemblers would build filters alone because their partner was not available, they were instructed not to do so because of the financial consequences if they damaged an expensive filter.
2.By February 2005, plaintiff's job duties included not only building the filters but he was also the set up operator and a trainer due to his experience and high competence level. Robert Steele was the clean room manager and plaintiff's supervisor at the times in question. *Page 3 
3.In approximately November 2004, plaintiff began experiencing low back pain. The pain gradually grew worse and he also developed left leg pain which progressively worsened as well. Mr. Steele noticed him limping when he came to work one day in February 2005 and asked him what had happened. Plaintiff described his pain and indicated that he did not know what had caused it. He went to the emergency room on February 19, 2005 and gave a history of having had pain since the previous November with increased leg pain and numbness for three weeks. He denied having sustained any trauma but advised that his job involved twisting. Dr. Oeters treated him with medication, including a steroid dose pack, and instructed him not to use alcohol for pain relief.
4.Plaintiff continued working despite his symptoms, but on March 15, 2005 he returned to the emergency room with worse leg pain. Dr. Cooke examined him there and noted that his blood pressure was dangerously high and needed treatment, but as far as his presenting symptoms were concerned, she diagnosed him with sciatica, prescribed medication for him and referred him to Dr. Miller, an orthopedic surgeon.
5.On March 25, 2005, plaintiff went to Dr. Miller and told the doctor that he had had low back and left leg pain for approximately eight months and that it had been caused by twisting movement. After examining him, Dr. Miller was of the impression that he probably had a ruptured disc, so an MRI was ordered. The test confirmed that plaintiff had a large herniated disc at L5-S1.
6.The pain continued to worsen and on approximately April 21, plaintiff asked Mr. Steele if he could take off the next day, a Friday. Mr. Steele could tell from plaintiff's behavior that plaintiff was in pain and he allowed the request. Plaintiff called him the next Monday and *Page 4 
told him that he was still bad off and needed to take a week of vacation. Mr. Steele again allowed the request but encouraged plaintiff to see a doctor about the problem.
7.On April 28, 2005, plaintiff returned to Dr. Miller who advised him of the MRI findings and discussed treatment options. At that point, plaintiff's symptoms were severe enough that he was ready to consider surgery. Consequently, Dr. Miller referred him to Dr. Reeg, an orthopedic spine surgeon. Dr. Reeg evaluated plaintiff at the Washington clinic on May 2, 2005. In view of his findings and plaintiff's desire for surgery, the doctor made arrangements to perform the operation later that day in Greenville. Dr. Reeg then operated on plaintiff's back to decompress the L5-S1 interspace.
8.Bill Payne, Dr. Reeg's physician assistant, followed plaintiff's recovery after the operation. Plaintiff initially improved and was sent to physical therapy. However, by August 2005 he was experiencing worse symptoms, so Mr. Payne ordered a repeat MRI. The MRI was not performed until after another follow-up visit on February 1, 2006, but it revealed evidence of a residual or recurrent disc herniation at L5-S1 as well as epidural scarring at the S1 nerve root. Mr. Payne kept plaintiff out of work and treated him with epidural steroid injections and medications. The physician's assistant continued to follow plaintiff's progress until the date of hearing before the Deputy Commissioner.
9.Plaintiff has alleged that he sustained two injuries at work which were causal factors in the herniated lumbar disc for which he underwent surgery. He testified that the first injury occurred on February 19, 2005, that he was building a model 54 filter, the largest one made, without assistance that day, that it slipped as he was handling it and that he felt a sharp pain in his back, when he tried to catch it. The second injury allegedly occurred on April 21, *Page 5 
2005 when he claimed he was pulling on a filter and experienced worsening of his back pain. However, the undersigned do not accept plaintiff's allegations as credible.
10.Despite the company policy of promptly reporting injuries to the supervisor, the plaintiff did not tell Mr. Steele of his injury at work until July 2005, which was approximately five months after the first injury. When Mr. Steele asked him about his condition in February, he denied being aware of any injury and he denied having sustained an injury when he was seen at the emergency room on February 19, 2005. Furthermore, he told the hospital staff that day that he had been having symptoms for months and that his symptoms had been worse for three weeks prior to that date.
11.Plaintiff never told Dr. Miller or Dr. Reeg about having been hurt at work in February or April. When he stopped working in April, he completed FMLA forms for his employer but did not report an injury or ask about workers' compensation benefits at that time.
12.Plaintiff did not report his alleged injuries to his employer until July 2005, which was over two months after the most recent alleged injury. Defendant-employer did not have actual knowledge of any injury having occurred at work or otherwise. Plaintiff did not have reasonable excuse for the delay in giving notice.
13.Furthermore, even if the two incidents plaintiff described had occurred, the undersigned find the medical testimony is not sufficient to establish a causal relationship between the incidents alleged and the herniated disc for which he was treated beginning on February 19, 2005.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following: *Page 6 
 CONCLUSIONS OF LAW
1.Plaintiff did not sustain an injury by accident arising out of and in the course of his employment or a specific traumatic incident of the work assigned with defendant-employer on either February 19, 2005 or April 21, 2005. N.C. Gen. Stat. § 97-2(6); Anderson v. NorthwesternMotor Company, 233 N.C. 372, 64 S.E.2d 265 (1951).
2.Even if plaintiff had sustained compensable injuries on those dates, his claims would be barred due to his failure to give notice to the injuries to his employer within thirty days. Defendant-employer did not have actual knowledge of any injury and was prejudiced by the delay in receiving notice. N.C. Gen. Stat. § 97-22.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1.Plaintiff's claims for workers' compensation benefits are hereby DENIED.
2.Each side shall pay its own costs.
This the 3rd day of December, 2007.
S/_____________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
S/_____________________ DIANNE C. SELLERS *Page 7 
COMMISSIONER
S/_____________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1